COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Senior Judge Hodges
Argued at Norfolk, Virginia


PAPCO OIL COMPANY AND
 LIBERTY MUTUAL INSURANCE COMPANY
                                        OPINION BY
v.   Record No. 0989-97-1      JUDGE WILLIAM H. HODGES
                                     NOVEMBER 18, 1997
WILLIAM KENNETH FARR


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Bradford C. Jacob (Taylor & Walker, on
        brief), for appellants.

        Ralph Rabinowitz (Rabinowitz, Rafal, Swartz,
        Taliaferro & Gilbert, on brief), for
        appellee.


    Papco Oil Company and its insurer (hereinafter referred to

as "employer") appeal a decision of the Workers' Compensation

Commission (commission) holding employer responsible for the cost

of certain medical expenses incurred by William Farr (claimant).

 Employer contends that the commission erred in finding it

responsible for the cost of claimant's (1) June 26, 1994 through

July 5, 1994 and September 19, 1994 through September 27, 1994

medical treatment related to claimant's idiopathic

thrombocytopenia (ITP);[1] (2) January 30, 1995 through

February 8, 1995 medical treatment related to his deep venous

thrombophlebitis (DVT)[2] and pulmonary embolism; (3) May 16, 1995

_____

    [1]Thrombocytopenia is the decrease in the number of blood
platelets.  See Dorland's Medical Dictionary, 27th Edition.

    [2]Thrombophlebitis is the inflammation of a vein associated
with thrombus formation, i.e., an aggregation of blood factors,
primarily platelets and fibrin with entrapment of cellular

through May 24, 1995 medical treatment related to his DVT and pulmonary embolism; and (4) coumadin therapy. Finding no error, we affirm the commission's decision.

## Facts

On March 7, 1994, claimant sustained a compensable back injury.[3] On April 1, 1994, claimant underwent lumbar disc surgery causally related to his compensable injury. In June, 1994, claimant was scheduled for a second back surgery. During a routine work-up prior to that surgery, claimant's physicians found that he suffered from ITP. On June 22, 1994, Dr. Robert L. Burger examined claimant with regard to his ITP. On June 30, 1994, Dr. Burger admitted claimant to the hospital to undergo treatment for his ITP. On claimant's history and physical form, Dr. Burger noted that "claimant had been told by Dr. Messer, the orthopedic surgeon, that the platelet situation needed to be clarified before surgery." In a July 5, 1994 discharge summary, Dr. Burger noted that claimant's platelet count had increased from 15,000 to 210,000 after infusion of intravenous gammaglobulin. Dr. Burger opined that claimant could proceed with surgery.

---

elements causing vascular obstruction at the point of its formation. See Dorland's Medical Dictionary, 27th Edition.

[3]The full commission refused to consider any medical evidence filed by claimant with the commission after the February 8, 1996 hearing. Claimant did not appeal this ruling. Accordingly, on appeal, we did not consider any medical records filed with the commission after February 8, 1996.

On July 23, 1994, claimant underwent his second back surgery.  Claimant was discharged from the hospital on July 24, 1994.  Three to four days after discharge, claimant developed right-sided chest pain.

On August 19, 1994, claimant was again admitted to the hospital for treatment of pleural effusion and ITP.  He remained in the hospital until August 27, 1994.  On August 19, 1994, Dr. Chantal Brooks became claimant's treating physician.

On September 19, 1994, claimant was admitted to the hospital for treatment of his ITP before his third back surgery.  After physicians corrected claimant's platelet count, he underwent his third back surgery in September, 1994.

After claimant's third back surgery, he developed DVT, which required hospital treatment from January 30, 1995 through February 8, 1995.  While in the hospital, claimant developed a pulmonary embolism, a complication of his DVT.

On May 8, 1995, claimant underwent an elective splenectomy to treat his ITP.  Shortly after discharge from the hospital, claimant was readmitted due to recurrent left lower extremity DVT and pulmonary embolus.

In a letter dated June 12, 1995, Dr. Brooks summarized claimant's medical treatment beginning August 19, 1994.  Dr. Brooks opined that the May, 1995 splenectomy markedly improved claimant's platelet count.  Dr. Brooks also noted the following:

> [Claimant] returned to the office in
> follow-up thereafter and was noted to become
> again increasing thrombocytopenic.  It was

3

elected therefore to start him on steroid therapy in November of 1994 at which time his platelet count was 20,000. In February of 1995, as a result of inactivity secondary to the multiple lumbar surgeries and residual low back pain and leg pain as well as the Prednisone therapy, the patient had to be admitted to Virginia Beach General Hospital with deep venous thrombophlebitis of the left lower extremity along with a pulmonary embolus.

As of June 12, 1995, claimant remained on coumadin, an anti-coagulant, to prevent pulmonary emboli that could be caused by claimant's DVT.

On January 22, 1996, Dr. Lara L. Dimick, the surgeon who performed claimant's splenectomy, opined that ITP's cause is generally unknown. Dr. Dimick stated that she could not determine exactly why claimant developed ITP. However, she believed that it was "a definite possibility that [the ITP] could be related to things that happened during his back surgery." On January 31, 1996, Dr. Dimick wrote: "There is no way that we can know whether [claimant] had [ITP] prior to his surgery or whether this was a result from interventions that he received while he was in the hospital for his original back surgery." Dr. Dimick also opined:

I do not believe any physician could answer your question of probabilities in this case. However, given the fact that [claimant] was healthy prior to his other surgeries and had no clinical signs or symptoms of this disease would certainly support the fact that he did not have [ITP] earlier. I feel that it is likely that he received some heparin flush while he was in the hospital to flush out intravenous lines. This would not necessarily be documented in any records and

4

could _possibly_ cause this disease process.

Therefore, all I can state with certainty is that there is a possibility that [claimant's] injuries were related to his hospital stay.

On March 20, 1996, Dr. Brooks wrote:

As clearly stated by Dr. Laura [sic] Dimick from a strictly scientific standpoint, it is impossible to say whether [claimant's] injury on the job followed by his surgery could in some way be responsible for his [ITP] finally resulting in a splenectomy. Clearly, there was no documentation prior to the initial injury of the presence of any thrombocytopenia, and it was only subsequent to the surgery that this was clearly documented and evaluated.

The injury and the surgery could have aggravated a pre-existing condition; however, I am unable to state this with certainty, having no data with which to make this suggestion.

I would have to therefore state that in my opinion it is possible that the [ITP] that finally resulted in a splenectomy was related to the treatment or the aftermath of the treatment that [claimant] received as a result of his injury on the job.

On January 12, 1996, Dr. John C. Schaefer, who reviewed claimant's medical records for employer, commented via letter regarding Dr. Dimick's opinions. Dr. Schaefer noted that "[t]he diagnosis of immune thrombocytopenia is often a primary event without an apparent underlying disease. However, it can be associated with among other things an underlying immunoproliferative disorder, either malignant or non-malignant." Dr. Schaefer also listed various other conditions and drugs, including heparin, which might cause ITP. Dr. Schaefer did not

5

render his own opinion as to the cause of claimant's ITP.

## Commission's Decision

The commission held that claimant failed to prove that his compensable injury by accident or the treatment required for his work-related back injury caused his ITP.[4] However, because the medical evidence proved that claimant's ITP had to be treated before he could undergo the second and third back surgeries, the commission held employer "liable for the cost of correcting, at least temporarily, the ITP because this condition needed to be resolved so that the work-related back injury could be treated by surgery." In so ruling, the commission held employer responsible for the cost of Dr. Burger's treatment, and the hospitalizations on June 26, 1994, September 19, 1994, and September 26, 1994.

In addition, based upon Dr. Brooks' June 12, 1995 notes, the commission held employer liable for the cost of the hospitalization beginning on January 30, 1995 for treatment of claimant's DVT and associated embolism and continued medical treatment for same. The commission also held employer liable for the May 16, 1995 through May 24, 1995 hospitalization on the ground that it was precipitated by a recurrence of claimant's DVT, which was initially caused by the work injury. Finally, the commission held employer liable for claimant's coumadin therapy.

The commission did not hold employer liable for claimant's hospitalization from August 19, 1994 through August 27, 1994, finding that no medical evidence proved that this treatment for

---

[4]Claimant did not appeal this finding.

pleural effusion and ITP was causally related to the compensable work injury.

<u>Analysis</u>

On appeal, we view the evidence in the light most favorable to the prevailing party below. <u>See</u> <u>Lynchburg Foundry Co. v. Goad</u>, 15 Va. App. 710, 712, 427 S.E.2d 215, 217 (1993). In addition, the commission's factual findings will be upheld if supported by credible evidence. <u>See</u> <u>James v. Capitol Steel Constr. Co.</u>, 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989). "However, the question of whether the disputed medical treatment was necessary within the meaning of Code § 65.2-603 is a mixed question of law and fact." <u>Goad</u>, 15 Va. App. at 712-13, 427 S.E.2d at 217. Accordingly, the commission's conclusions as to the necessity of the disputed medical treatment are not binding upon this Court. "However, both the purposes of the Workers' Compensation Act and the equities of the situation guide us in affirming the commission's award." <u>Id.</u> at 713, 427 S.E.2d at 217.

> Code § 65.2-603(A)(1) provides in pertinent part as follows:
> As long as necessary after an accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician . . . and such other necessary medical attention.

"'So long as a causal relationship between the industrial accident and the . . . [treatment rendered] is shown, the employer is financially responsible for the medical attention

which the attending physician deems necessary, subject to review by the Commission.'" Goad, 15 Va. App. at 714, 427 S.E.2d at 217-18 (quoting Jensen Press v. Ale, 1 Va. App. 153, 159, 336 S.E.2d 522, 525 (1985)). Moreover, Code § 65.2-603 should be construed liberally in favor of the claimant, in harmony with the Act's humane purpose. See Goad, 15 Va. App. at 713, 427 S.E.2d at 217.

### ITP Treatment

Credible medical evidence established that claimant's ITP was diagnosed during medically necessary treatment of his compensable back injury. To continue treatment of claimant's back with further surgeries in July and September, 1994, claimant's physicians required limited treatment of the ITP to normalize his platelet count. Thus, treatment of the ITP was a medically necessary adjunct to the successful completion of that care required by claimant's work-related back injury.

Accordingly, under the facts of this case, the commission did not err in holding employer responsible for Dr. Burger's medical treatment and for medical expenses incurred by claimant from June 26, 1994 through July 5, 1994 and from September 19, 1994 through September 27, 1994.

### DVT and Pulmonary Embolic Treatment

Dr. Brooks' June 12, 1995 notes provide credible evidence to support the commission's award of medical expenses incurred from January 30, 1995 through February 8, 1995, and May 16, 1995

9

through May 24, 1995, for treatment of claimant's DVT and pulmonary emboli. Dr. Brooks stated that in February 1995 claimant had to be hospitalized for DVT and pulmonary emboli as a result of inactivity secondary to his multiple lumbar surgeries and residual low back and leg pain. The May 1995 treatment was necessitated by a recurrence of the DVT and pulmonary embolism, which flowed from the compensable injury. Therefore, because the DVT and pulmonary emboli followed as natural consequences of the compensable back injury, the commission did not err in holding employer responsible for medical expenses related to treatment of those problems. See Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 283, 348 S.E.2d 876, 879 (1986).

Even if claimant's prednisone therapy also contributed to cause his DVT and pulmonary embolism, employer is still responsible for the cost of medical treatment related to those conditions under the "two causes rule." That rule provides that a condition which has two causes, one related to a work injury, and one not, is compensable and the treatment of that condition will be the responsibility of the employer. See Shelton v. Ennis Bus. Forms, Inc., 1 Va. App. 53, 55, 334 S.E.2d 297, 299 (1985).

### Coumadin Therapy

The medical records established that Dr. Brooks prescribed the coumadin therapy to prevent pulmonary emboli, which might be caused by claimant's left lower extremity DVT. Because the DVT flowed as a natural consequence of the compensable back injury,

10

employer is responsible for any necessary medical treatment related to the DVT.  Accordingly, the commission did not err in holding employer responsible for the cost of the coumadin therapy.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>