COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bumgardner and Frank
Argued at Richmond, Virginia


CITY OF MARTINSVILLE WATER AND SEWER AND
 VIRGINIA MUNICIPAL GROUP SELF-INSURANCE
 ASSOCIATION

                                    MEMORANDUM OPINION* BY
v.    Record No. 2753-98-2          JUDGE ROBERT P. FRANK
                                         JULY 27, 1999
TIMOTHY SCOTT TURNER


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Richard D. Lucas (T. Borden Ellis; Carter,
            Brown & Osborne, P.C., on briefs), for
            appellants.

            Wesley G. Marshall for appellee.


     City of Martinsville Water and Sewer and its insurer

(appellant) assert that the Virginia Workers' Compensation

Commission erred in finding:  1) a causal relationship between

the April 29, 1996 work-related injury and claimant's back

disability and treatment after October 8, 1996, 2) a causal

relationship between the April 29, 1996 work-related accident

and claimant's neck disability and treatment, 3) that claimant's

treatment was reasonable and necessary, 4) that Dr. Joiner was

not claimant's only authorized treating physician, 5) that Dr.

Knox, Dr. Mathern and Dr. Matthews were authorized treating

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

physicians, and 6) that claimant did not unjustifiably refuse medical treatment.  For the following reasons, we affirm the commission's opinion dated October 29, 1998.

## I.  BACKGROUND

The parties are familiar with the record, and this memorandum opinion recites only those facts necessary to the disposition of the issues before the Court.

On April 29, 1996, claimant strained his back while working in a manhole.  He was manually forcing a rod into a clogged sewer line when he felt a "bad pop" in his back and a "shock" from the "top of [his] head to the bottom of [his] feet." Co-workers of claimant assisted him out of the manhole.  Then, claimant's supervisor drove him to the emergency room where he was diagnosed with acute back strain and a possible herniated nucleus pulposus.

On May 1, 1996, claimant saw Dr. John Mahoney, an orthopedic surgeon, who noted that his examination of claimant indicated "pain across the lumbosacral junction with spasm." Claimant testified that he told Dr. Mahoney that he was suffering from numbness in his left arm, but no record of arm numbness occurs in Dr. Mahoney's notes.

Both the emergency room physician and Dr. Mahoney noted that claimant had a history of spondylolisthesis.  It is well documented in the record that claimant suffered prior injuries

-

to his back and had been diagnosed with spondylolisthesis as early as 1987.

Claimant underwent an MRI exam on May 3, 1996, which revealed Grade I spondylolisthesis at L5-S1, minimal disc protrusion at L3-4 and L4-5 with degenerative disc disease, and "findings suspicious for herniated nucleus pulposus."

On May 7, 1996, Dr. Mahoney referred claimant to Dr. Eric Korsh, an orthopedic surgeon, because he felt that claimant should be "considered for surgical treatment."  Dr. Korsh first examined claimant on May 9, 1996.  Dr. Korsh noted that claimant's pain goes into "both buttocks and both legs," "his testicles," and "down to his hamstrings."  Dr. Korsh also reported claimant's complaint of neck discomfort and numbness and tingling in the left arm.  Dr. Korsh's notes reflect Grade I spondylolisthesis, disk space narrowing at L5-S1, degenerative disc disease, and a central disk herniation.  Dr. Korsh recommended an "intensive course of physical therapy."  Dr. Korsh concluded his report by writing, "Hopefully I can continue to treat him conservatively."

Dr. Korsh's office notes reflect that on May 15, 1996, claimant called with complaints of severe pain and numbness in his left arm.  Claimant also complained of pain in his lower back, right leg and neck.  Dr. Korsh wrote that he told claimant that he wanted to pursue a conservative course of treatment. Dr. Korsh ordered an MRI exam and x-rays of claimant's neck.

-

The MRI exam of the cervical spine indicated a bulging disk at C4-5 and C5-6 and a herniation at C6-C7. Dr. Korsh decided to continue physical therapy.

The physical therapist's report of June 7, 1996 indicated that claimant exhibited tenderness in his lower back and a decreased C-6 reflex on the left and reported "occasional left upper extremity pain." The physical therapist planned to treat claimant with intermittent cervical traction and outpatient care using ultrasound, pain reducing modalities, and strengthening and conditioning programs for the neck, lower trunk and lower extremities.

On June 26, 1996, the physical therapist noted that while claimant reported reduced cervical pain and no upper extremity pain, he experienced "significant increases in his low back pain."

On July 8, 1996, claimant reported increased lower back pain, aching in his bilateral extremities, testicular pain and "tightness" in his neck to the physical therapist.

Dr. Korsh reported on July 18, 1996 that he would continue to treat claimant with conservative measures. Dr. Korsh stated that he only would consider surgical intervention "if [claimant's] pain progresses to a level where he could not tolerate it and he fails conservative management."

-

On July 26, 1996, claimant reported to the physical therapist that he experienced loss of bladder control the previous day as well as neck stiffness and testicular pain.

On August 5, 1996, Dr. Ward W. Stevens, Jr., a neurosurgeon, examined claimant.  Dr. Stevens' diagnosis was "acute low back strain associated with spondylolisthesis."  Dr. Stevens recommended that claimant undergo a CT/Myelogram before considering a surgical approach and stated, "I would also recommend that Mr. Turner delay a surgical approach as long as he can with this type of diagnosis; and if he did undergo surgery, the procedure of choice would be a decompressive procedure and possible fusion."

On August 26, 1996, claimant told Dr. Korsh that any pain relief he received from the physical therapy was temporary.  Dr. Korsh reviewed claimant's diskogram and noted that it showed "positive concordant pain, very severe, at L4-5 along with severe degenerative changes" and "concordant pain with significant degenerative changes" at L5-S1.  The diskogram also showed spondylolisthesis and spondylolysis.  Dr. Korsh indicated that physical therapy would be continued for two months and, then, additional options would be discussed.

Claimant reported to Dr. R. Blake Dennis, an orthopedic surgeon, on August 27, 1996 for a second opinion.  Dr. Dennis' diagnosis was "lumbar disc sprain with pre-existing isthmic developmental spondylolisthesis secondary to spondylolysis."

-

Dr. Dennis stated that he would be reluctant to consider surgery for claimant's problem and felt that the success rate for such a procedure would be no better than twenty percent.

Over the next month, claimant continued to report to Dr. Korsh with "exquisite" and "excruciating" pain. Then, on October 7, 1996, claimant told Dr. Korsh that the pain was no longer tolerable and that he was getting worse every day. Dr. Korsh discussed surgery with claimant. On October 9, 1996, Dr. Korsh and Dr. Shumate performed a lumbar fusion at L4-5 and L5-S1.

On October 17, 1996, Dr. Korsh wrote that claimant was experiencing "post operative discomfort." Dr. Korsh also noted that claimant continued to experience neck pain, but indicated that it would be addressed later. Claimant was to begin a three-month course of physical therapy.

On October 28, 1996, Dr. Korsh's office note states that claimant is going to be permanently disabled from performing his job duties.

On December 3, 1996, claimant saw Dr. Korsh for "severe neck and right arm pain." Dr. Korsh noted that claimant "has pain going from the neck to both shoulders to both arms, though the right is worse than the left." Claimant reported "numbness and tingling in both arms." Dr. Korsh advised claimant not to attempt aggressive measures unless the pain was such that he could not live with it. Claimant told Dr. Korsh that he could

-

live with the pain and did not wish to undergo additional surgery.

On January 6, 1997, Dr. Korsh remarked that claimant's cervical spine MRI showed a "small central C4-5 disc herniation with central right-sided C6-7 disc herniation which is much larger and appears to be causing pressure on the existing C7 nerve root which does significantly correspond to this patient's symptoms." Dr. Korsh discussed surgery with claimant, but wrote that he would only consider surgery, "if [claimant] felt that he was not improving or in fact he was getting worse and could no longer tolerate his pain."

On January 16, 1997, Dr. Korsh denied the request for a functional capacity evaluation by Melissa Boone, claimant's nurse case manager, because claimant's lumbar fusion was performed just three months prior and the problems with his neck were interfering with his rehabilitation progress. Additionally, Dr. Korsh noted that he told Ms. Boone that surgery might be required to correct claimant's neck problems.

In Dr. Korsh's February 3, 1997 letter to Dr. Mahoney, he stated, "Apparently [claimant] is having a problem with worker's comp covering him for this injury which occurred immediately and concurrent with his low back problems."

On February 24, 1997, Dr. Korsh wrote to Dr. Mahoney:

> Currently his major complaints revolve
> solely around his neck and right arm.
> Subsequently at this point, due to failed

-

conservative measures, he has elected to
proceed with surgical intervention. This
will consist of an anterior cervical
diskectomy and fusion at the C6-C7 level on
2/26/97.

Dr. Korsh performed the anterior cervical diskectomy on February
26, 1997.

On March 31, 1997, Dr. Korsh met with claimant, and they
discussed the onset of claimant's back and neck problems. Dr.
Korsh noted that claimant stated "unequivocally that the
cervical and lumbar problems are at the exact same time."

Dr. Korsh also met with Ms. Boone on March 31, 1997. In
his written notes of the meeting, he recorded that Ms. Boone was
informed that claimant's lumbar and cervical problems "occurred
at the same time and they occurred with his work related
incident. They are absolutely connected and I explained that to
Ms. Boone."

On April 24, 1997, Dr. Korsh wrote to Ms. Boone pursuant to
her request for additional information about claimant. As to
the relationship between the neck and back problems, Dr. Korsh
wrote:

Specifically Mr. Turner's cervical
complaints and surgical intervention is not
at all related to his lumbar sprain. What
it is related to is a work injury which
occurred on 4/29/96. It just so happens
that he injured his neck and his low back at
the same time. As you know, there is no
direct correlation between the neck and the
low back, but what is correlated is the two
injuries in the incident on 4/29/96 while he
was at work. Since that point, he has had

-

> neck and low back complaints. He has had
> upper and lower extremity complaints and
> these are all <u>directly</u> related to the
> incident on 4/29/96.

(Emphasis in original).

On June 2, 1997, Dr. Korsh met with Ms. Boone. Claimant was not present for the meeting. Dr. Korsh's record of the meeting stated, "We have made the decision to send [claimant] to Dr. Murray Joiner for conservative management and more aggressive rehab."

On June 9, 1997, claimant reported to Dr. Korsh that he had no neck pain but that he was experiencing some low back pain and pain in the left leg. Dr. Korsh noted that the cervical spine showed a "solid stable appearing fusion." Dr. Korsh's notes indicate that he informed claimant that he was closing his practice:

> I told him I would make an appropriate
> referral to a surgeon or a rehab physician
> for continuation of care. I recommended
> that he see Dr. Murray Joiner for
> continuation of his treatment. The patient
> requested an appointment with Dr. Knox. I
> reiterated my recommendation to see Dr.
> Joiner, but I told him that if he felt like
> he wanted to see Dr. Knox I would make an
> appointment for him to see Dr. Knox. The
> patient will consider who he wishes to see
> for follow up and contact my office.

Claimant testified before the deputy commissioner on October 7, 1997 that Dr. Korsh told him about the decision by Ms. Boone and Dr. Korsh to refer claimant to Dr. Joiner. Claimant stated that he told Dr. Korsh that he would prefer to

-

choose a new doctor from a panel of physicians.  Dr. Korsh then mentioned a doctor in Danville, Dr. Hallett Mathews, Dr. Joiner and Dr. Cecil B. Knox.  Claimant told Dr. Korsh that he would like to see Dr. Knox for pain control and Dr. Mathews should he require hardware removal.  Claimant testified that Dr. Korsh arranged his appointment with Dr. Knox.

Dr. Korsh met with Ms. Boone on June 23, 1997.  Dr. Korsh's notes of the meeting reflect that he explained to Ms. Boone that he referred claimant to Dr. Joiner, but that claimant requested an evaluation with Dr. Knox.  In the same note, Dr. Korsh wrote that Ms. Boone was informed that claimant knew Dr. Korsh's referral was Dr. Joiner, but that Dr. Korsh told claimant that he could make an appointment with Dr. Knox.  Dr. Knox examined claimant on October 1, 1997.

Dr. Joiner examined claimant on July 21, 1997.  Dr. Joiner could not relate claimant's cervical spine and neck pain to the work-related incident on April 29, 1996.  Dr. Joiner noted that claimant should have reported the onset of symptoms in the neck immediately or within seventy-two hours of the injury.  Dr. Joiner, therefore, could not relate the cervical fusion surgery to the work-related incident on April 29, 1996.

On July 21, 1997, Dr. Korsh wrote the following to Dr. Mathews:

> Timothy Turner is a patient of mine.  He has
> suffered a workers [sic] compensation
> injury.  He subsequently underwent a lumbar

-

decompression stabilization as well as an anterior cervical diskectomy and fusion.

As you are aware, I will be relocating my practice. Mr. Turner has requested a referral to you for follow up care. If you do have any questions regarding him please feel free to contact me.

Claimant was examined by Dr. Bruce Mathern, Dr. Mathews' associate, on July 29, 1997. Dr. Mathern's office note stated, "Mr. Turner is a very complex patient referred from the Roanoke area by both Dr. Korsh and Dr. Widmeyer." Dr. Mathews examined claimant on August 13, 1997.

Appellant denied claimant's claim and ceased payment of benefits to him in July 1997.

II. CAUSAL CONNECTION OF BACK DISABILITY AND TREATMENT

Appellant contends that claimant did not prove a causal connection between the April 29, 1996 workplace accident and his back disability and treatment after October 8, 1996. We reject that contention.

"'Factual findings of the [Workers' Compensation] Commission will be upheld on appeal if supported by credible evidence.'" Tumlin v. Goodyear Tire & Rubber Co., 18 Va. App. 375, 378, 444 S.E.2d 22, 23 (1994) (quoting James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989)). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wagner Enters., Inc. v.

-

Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citing Capitol Steel Constr. Co., 8 Va. App. at 515, 382 S.E.2d at 488). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Id. (citing Jules Hairstylists, Inc. v. Galanes, 1 Va. App. 64, 69, 334 S.E.2d 592, 595 (1985)). Causation is a factual finding that will not be disturbed on appeal if supported by credible evidence. See C.D.S. Const. Services v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978). "'A question raised by conflicting medical opinion is a question of fact.'" Dan River, Inc. v. Turner, 3 Va. App. 592, 596, 352 S.E.2d 18, 20 (1987) (quoting Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986)).

The commission was presented with conflicting medical evidence as to the causation of the back disability and related treatment after October 8, 1996. Dr. Korsh, claimant's authorized treating physician, opined that the back injury and treatment was causally related to the work-related incident on April 29, 1996. The commission placed great weight on the diagnosis and opinion of Dr. Korsh. We, therefore, find that there is credible evidence in the record to establish a causal connection between the accident on April 29, 1996 and claimant's continued back disability and treatment.

-

III.  CAUSAL CONNECTION OF NECK INJURY

Appellant contends that claimant did not establish a causal connection between the April 29, 1996 workplace accident and the injury to his neck.  We reject that contention.

Dr. Korsh repeatedly opined that claimant's neck condition was related to the workplace injury that occurred on April 29, 1996.  Dr. Joiner, however, did not believe that the neck condition was causally related to the April 29, 1996 incident because claimant did not report neck pain within seventy-two hours.  Additionally, there was evidence that claimant had been treated for neck problems prior to the occurrence of the workplace accident.  The commission accepted Dr. Korsh's opinion as to the relationship between claimant's neck condition and the workplace accident.  We find that there was credible evidence in the record to support the commission's finding.

IV.  NECESSITY AND REASONABLENESS OF THE TREATMENT

Appellant contends that the commission erred in finding that claimant's lumbar and cervical fusions were reasonable and necessary.  We reject appellant's position.

"'[T]he question of whether the disputed medical treatment was necessary within the meaning of Code § 65.2-603 is a mixed question of law and fact.'"  Papco Oil Co. v. Farr, 26 Va. App. 66, 73, 492 S.E.2d 858, 861 (1997) (quoting Lynchburg Foundry Co. v. Goad, 15 Va. App. 710, 712-13, 427 S.E.2d 215, 217 (1993)).  "Accordingly, the commission's conclusions as to the

-

necessity of the disputed medical treatment are not binding upon this Court."  Id. at 73-74, 492 S.E.2d at 861.  However, "'so long as a causal relationship between the industrial accident and the . . . [treatment rendered] is shown, the employer is financially responsible for the medical attention which the attending physician deems necessary.'"  Id. at 74, 492 S.E.2d at 861 (quoting Goad, 15 Va. App. at 714, 427 S.E.2d at 217-18).

As discussed earlier, we believe that there is credible evidence to support the commission's finding that there was a causal connection between the April 29, 1996 workplace accident and claimant's back and neck injuries.  Dr. Korsh, claimant's treating physician, believed that the surgeries were necessary to treat claimant's back and neck injuries.  Initially, Dr. Korsh attempted to conservatively manage claimant's back and neck conditions with physical therapy and prescription pain medication.  After several months, claimant's pain continued to increase.  Dr. Korsh concluded that surgery, first for the lumbar back, and then for the neck, could improve claimant's condition and decrease his pain.  Dr. Korsh's initial attempts to avoid surgical intervention and his ultimate conclusion that claimant's back and neck pain could improve with surgery support the conclusion that claimant's treatment was necessary and reasonable.  We, therefore, affirm the commission's holding that claimant's treatment was necessary and reasonable.

V. AUTHORIZED TREATING PHYSICIANS

Appellant contends that the commission erred in not recognizing Dr. Joiner as claimant's authorized treating physician and in reversing the deputy commissioner's ruling that Drs. Mathews, Mathern and Knox were not authorized treating physicians. We reject that position.

"Whether an employer is responsible for medical expenses . . . depends upon . . . (3) whether the treating physician made a referral to the patient." Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199, 336 S.E.2d 903, 906 (1985). It is, therefore, a question of fact for the commission to determine whether a referral was made. On appeal, we do not disturb the commission's findings of fact if supported by credible evidence. See Carter v. Hercules Powder Co., 182 Va. 282, 288, 28 S.E.2d 736, 739 (1944).

The commission clearly relied on claimant's deposition testimony that Dr. Korsh, when contacted by claimant regarding Korsh's relocation, told claimant that he and Ms. Boone agreed on Dr. Joiner but that it was ultimately claimant's choice as to which doctor he was referred. Further, Dr. Korsh's office note of June 9, 1997 substantiated claimant's deposition testimony. Dr. Korsh noted that he recommended Dr. Joiner but claimant requested a referral to Dr. Knox. Dr. Korsh wrote that he told claimant he would make him an appointment with Dr. Knox. Dr. Korsh indicated that claimant would contact Dr. Korsh's office

-

after he considered which doctor he wished to see for follow-up care.

Dr. Korsh, then, sent a request to Dr. Knox for an appointment for claimant on June 12, 1997 by facsimile transmission.

On July 21, 1997, Dr. Korsh wrote a letter to Dr. Mathews stating that he was relocating his practice and his patient, Tim Turner, requested a referral to Dr. Mathews for follow-up care. Dr. Mathern, Dr. Mathews' associate, noted in his office notes from claimant's initial visit on July 29, 1997, that claimant was referred by Dr. Korsh.

Appellant relies on Dr. Korsh's office notes that state that while the claimant requested an appointment with Dr. Knox, his referral was to Dr. Joiner.

The commission believed that Dr. Korsh, in attempting to accommodate the wishes of both Ms. Boone and claimant, created a situation where Ms. Boone believed the referral was to Dr. Joiner and claimant believed the referral was to Drs. Knox and Mathews.

The commission found that there was evidence to support claimant's assertion that he was referred to Drs. Knox, Mathews and Mathern.  We find that there is credible evidence in the record to support the commission's finding and, therefore, hold that Drs. Knox, Mathews and Mathern were claimant's authorized treating physicians.

-

## VI.  UNJUSTIFIABLE REFUSAL OF MEDICAL TREATMENT

Appellant asserts that claimant unjustifiably refused medical treatment by electing not to return to Dr. Joiner for additional treatment.

We believe that this issue is resolved by our affirmance of the commission's finding that Drs. Knox, Mathews and Mathern were authorized treating physicians.  We find that claimant did not unjustifiably refuse medical treatment from Dr. Joiner as he was receiving authorized medical treatment from Drs. Knox, Mathews and Mathern.

## VII.  CONCLUSION

For these reasons, we hold that claimant's back and neck disabilities and treatment were causally related to the work-related accident on April 29, 1996.  We also hold that the commission's ruling that claimant's treatment was necessary and reasonable, that Drs. Knox, Mathews and Mathern were authorized treating physicians, and that claimant did not unjustifiably refuse medical treatment is supported by credible evidence. Therefore, we affirm the decision of the commission.

<u>Affirmed.</u>