COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Senior Judge Overton


THE UNINSURED EMPLOYER'S FUND
                                      MEMORANDUM OPINION*
v.    Record No. 1677-00-3               PER CURIAM
                                       NOVEMBER 21, 2000
DARYL CLARK CHILDRESS AND
 CARILION ROANOKE MEMORIAL HOSPITAL


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             (Mark L. Earley, Attorney General; John J.
             Beall, Jr., Senior Assistant Attorney
             General, on brief), for appellant.

             (Robert E. Evans, on brief), for appellees.


     The Uninsured Employer's Fund (the Fund) contends that the

Workers' Compensation Commission erred in holding it liable for

Daryl Clark Childress's (claimant) medical expenses incurred for

inpatient acute care at Roanoke Memorial Hospital (RMH) between

January 24, 1996 and March 11, 1996.  The Fund contends that

such expenses were not "necessary medical treatment" within the

meaning of Code § 65.2-603.  Upon reviewing the record and the

briefs of the parties, we conclude that this appeal is without

merit.  Accordingly, we summarily affirm the commission's

decision.  See Rule 5A:27.

                 On appeal, we view the evidence in the
              light most favorable to the prevailing party

─────────────────
     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

> below. In addition, the commission's
> factual findings will be upheld if supported
> by credible evidence. "However, the
> question of whether the disputed medical
> treatment was necessary within the meaning
> of Code § 65.2-603 is a mixed question of
> law and fact." Accordingly, the
> commission's conclusions as to the necessity
> of the disputed medical treatment are not
> binding upon this Court. "However, both the
> purposes of the Workers' Compensation Act
> and the equities of the situation guide us
> in affirming the commission's award."

Papco Oil Co. v. Farr, 26 Va. App. 66, 73-74, 492 S.E.2d 858, 861 (1997) (citations omitted).

Claimant suffered a traumatic closed head injury on October 12, 1995, as a result of a compensable automobile accident. The commission awarded claimant temporary total disability benefits and lifetime medical benefits. Claimant received acute care at RMH from October 12, 1995 through March 11, 1996, when he was transferred to a skilled nursing facility.

On August 16, 1999, claimant filed a Claim for Benefits, alleging that the Fund had paid only part of his RMH bill for inpatient services rendered between October 12, 1995 through March 11, 1996 and that the Fund owed RMH $30,437.32.

At the hearing on claimant's claim, the parties stipulated "that the claimant did not require an acute inpatient level of care after January 24, 1996, and that he could thereafter from a medical standpoint been treated at a lower level of medical service, such as a skilled nursing facility."

In holding the Fund liable for claimant's medical expenses incurred at RMH between January 24, 1996 and March 11, 1996, the commission found as follows:

> [Melinda Shelor-]Rogers[, a licensed clinical social worker assigned to claimant's case,] testified that she treated claimant's case as she would any other patient case. She worked from January 1996 to March 1996 to place the claimant in a facility which would accept him and which would be located within a reasonable distance from the claimant's family and caregivers. She submitted documentation of her efforts and explained that many of the facilities declined the claimant's case due to the nature of his injuries, his age, and his lack of funding. When Medicaid funding came through, Rogers was able to quickly expedite a transfer to RMH rehab on a trial basis. She continued to update several other facilities in case the trial period did not work out.
>
> Rogers also credibly explained that [RMH] did not have a facility on site to provide the necessary lower-level of care. Nor could the hospital, as the Fund suggests, simply supply the claimant with a lesser level of care to reduce the costs. Although the Carilion nursing facilities were owned by the same corporation as [RMH], Rogers testified that she could not force a transfer to these facilities but had to follow the same procedures as for any other, non-associated facility.

In its role as fact finder, the commission was entitled to conclude that Rogers's testimony was credible. Her testimony supports the commission's factual findings. Based upon those findings, the commission held that "the care the claimant received at [RMH] was 'necessary medical treatment' within the

meaning of Code § 65.2-603.  In so ruling, the commission found as follows:

> We do not find the six week period it took to find suitable placement for the claimant unreasonably lengthy.  Nor do we find that [RMH] failed to take necessary steps to place the claimant more quickly. [RMH] was not equipped to provide the lesser care the claimant required.  Its discharge planner, Rogers, worked quickly to secure funding, a necessary prerequisite to placement in a facility, and to find placement for the claimant which was satisfactory and within a reasonable distance from the family.  [RMH] had a duty to treat the claimant and . . . Rogers could not have compelled alternate placement before March 11, 1996, and the hospital could not simply discharge the claimant, given the grievous nature of his injuries.

We note that "Code § 65.2-603 should be construed liberally in favor of the claimant, in harmony with the Act's humane purpose."  Id. at 74, 492 S.E.2d at 861-62.

Based upon Rogers's credible testimony regarding her ongoing efforts to obtain funding and to place claimant in another facility, the severe nature of claimant's injuries, and the lack of evidence of any appropriate and reasonable alternative to continuing to provide claimant acute care at RMH, the commission did not err in holding that claimant's treatment through March 11, 1996 was "necessary medical treatment" within the meaning of Code § 65.2-603.  Contrary to the Fund's contention, the fact that the claimant "could" have, "from a medical standpoint," been treated at a lower level of medical

- 4 -

service after January 24, 1996, did not compel the conclusion that his treatment at RMH through March 11, 1996 was not "necessary medical treatment" under Code § 65.2-603.

For these reasons, we affirm the commission's decision.

Affirmed.