COURT OF APPEALS OF VIRGINIA

Before:   Judges Haley, Beales and Alston
Argued at Alexandria, Virginia


BAHMAN HAFTSAVAR

                                                                OPINION BY
v.       Record No. 0873-11-4                    JUDGE ROSSIE D. ALSTON, JR.
                                                                FEBRUARY 14, 2012

ALL AMERICAN CARPET AND RUGS, INC. AND
  TWIN CITY FIRE INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

David L. Bayne, Jr. (Ashcraft & Gerel, on briefs), for appellant.

William T. Kennard (O'Connell & O'Connell, LLC, on briefs), for appellees.


Bahman Haftsavar ("claimant") appeals a decision of the Virginia Workers'

Compensation Commission ("commission") denying claimant's request for All American Carpet

and Rugs, Inc. ("employer") to compensate claimant for treatment of his heart condition.

Claimant contends that the commission erred in failing to hold employer responsible for

treatment of claimant's heart condition, which occurred prior to repair of his compensable right

inguinal hernia.  For the following reasons, we conclude that the commission did not err in this

regard and affirm the decision below.

I.  BACKGROUND

On January 5, 2007, claimant sustained a compensable right-sided inguinal hernia arising

out of and in the course of his employment with employer while attempting to lift and pull a

large box.  On June 8, 2007, Dr. Albert Herrera, a primary care physician, saw claimant in his

office and conducted a pre-operative clearance evaluation.  During this visit, Dr. Herrera

observed that claimant's electrocardiogram ("EKG") results were abnormal and referred claimant for further cardiac evaluation.

Claimant saw Dr. Harvey Sherber, a cardiologist, on July 1, 2007. Dr. Sherber conducted a stress test on claimant and found the results "markedly abnormal." Consequently, Dr. Sherber recommended cardiac catheterization with possible angioplasty and/or stenting. Two days later, Dr. Sherber performed cardiac catheterization on claimant, which revealed significant obstructions in claimant's coronary arteries. As a result of Dr. Sherber's findings, claimant underwent coronary bypass grafting surgery on July 5, 2007. Dr. Sherber wrote a letter to Dr. Herrera concerning the results of claimant's cardiac catheterization and stated: "[T]he patient was thought to be a better candidate for aortocoronary bypass surgery . . . . I think that he was fortunate that critical coronary artery disease was detected before the patient had a myocardial infarction [i.e., a heart attack]."

From July until March 16, 2008, claimant recovered from his heart surgery and prepared for his hernia surgery. On March 17, 2008, claimant underwent hernia surgery. Employer accepted the hernia injury as compensable and paid claimant temporary disability benefits through April 13, 2008. On December 3, 2009, claimant filed a change-in-condition application for hearing, asking for payment of all medical costs related to his bypass surgery.

On March 25, 2010, the deputy commissioner held an evidentiary hearing. Employer opposed the change-in-condition application because it believed there was no causal connection between claimant's need for bypass surgery and his work-related injury. As the only witness, claimant testified consistently with the facts and events described above regarding his medical care. Claimant further testified that he had no prior indications of a heart condition, including shortness of breath, chest pain, or a family history of heart disease.

Claimant and employer submitted medical records indicating that claimant's heart condition was severe enough to warrant surgery on the same day it was detected, July 5, 2008. These included Dr. Sherber's July 6, 2007 report to Dr. Herrera about the results of claimant's cardiac catheterization, and a May 5, 2009 letter from Dr. Herrera summarizing claimant's treatment, including the delay in his hernia surgery. The letter stated that a necessary cardiac catheterization revealed severe significant coronary artery disease, and this catheterization resulted in claimant undergoing emergency coronary bypass graft surgery.

The deputy commissioner concluded that employer was responsible for treatment of claimant's heart condition, adopting the analysis of the commission's decision in Ball v. Asplundh Tree Expert Co., No. 209-17-09 (Va. Workers' Comp. Comm'n Oct. 5, 2004).

Upon review at employer's request, the commission reversed the deputy commissioner's decision on this issue and found employer not responsible for the cost of claimant's heart surgery. In its reversal, the commission concluded that holding employer responsible for every unrelated condition which requires treatment before the compensable injury can be treated, regardless of whether treatment for the unrelated condition is needed independent of treating the compensable injury, contradicts the Workers' Compensation Act's ("the Act") objectives. The commission enunciated a new test for future claimants with similar medical issues to claimant, stating:

> [W]e find that the appropriate test is whether the treatment for the unrelated condition would be necessary if surgery for the compensable condition was not contemplated. In other words, the issue is whether the primary motivation for treatment of the unrelated condition is to allow the claimant to undergo the compensable treatment, or whether it is to treat the unrelated condition. If the unrelated condition would require treatment without reference to the compensable treatment, then there is simply no causal connection between the treatment for the

> unrelated condition and the compensable injury. Under these conditions, compensability should be denied.
>
> Applying this test to the facts of the present case, it is clear [employer] should not be responsible for treatment of [claimant's] heart condition.

In support of the determination that claimant's heart surgery was not compensable as other necessary medical attention without a "causal connection between the treatment for the unrelated condition and the compensable injury," the commission made the following factual findings: 1) there was no evidence that claimant's heart condition was materially aggravated or accelerated by his compensable injury; 2) there was no evidence that the compensable injury accelerated the need for treatment of claimant's heart condition; 3) according to Dr. Herrera, claimant had an urgent need for emergency coronary bypass surgery; and 4) claimant's need for cardiac surgery was completely unrelated to his impending hernia surgery and was necessary, independent of that upcoming surgery, to save his life.

The dissenting commissioner agreed with the deputy commissioner's conclusion on this issue and would have required employer to compensate claimant for his heart surgery under a different test. The dissenting commissioner stated: "The test for determining whether the employer is responsible for medical care prior to a compensable surgery is (1) whether the medical condition was discovered during the pre-operative evaluation and (2) whether the medical treatment is necessary so that the injured worker can safely undergo the compensable surgery."

Claimant noted this appeal to the commission's decision. At oral argument, a panel of this Court requested supplemental briefs from the parties regarding the Act's requirement for a causal connection between medical treatment and a compensable injury, along with suggestions for a brightline test in cases similar to the one at bar.

## II.  ANALYSIS

### A.  The Act Does Not Require Employers to Cover Treatment of Medical Conditions Completely Unrelated to a Compensable Injury or Illness

Code § 65.2-603(A) states:

> Pursuant to this section:  1. As long as necessary after an accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician chosen by the injured employee from a panel of at least three physicians selected by the employer and such other necessary medical attention.

Whether disputed medical treatment is compensable as "other necessary medical attention" within the definition of Code § 65.2-603 presents a mixed question of law and fact, which this Court reviews *de novo*.  Lynchburg Foundry Co. v. Goad, 15 Va. App. 710, 712-13, 427 S.E.2d 215, 217 (1993).  "The services which an employer has to furnish under the Work[ers'] Compensation Act are necessary services incident to the treatment of an injury sustained in a compensable accident."  Ins. Mgmt. Corp. of Tidewater/Baldwin Bros. & Taylor v. Daniels, 222 Va. 434, 439, 281 S.E.2d 847, 849 (1981).  Subject to the commission's review, the employer is responsible for medical attention if 1) a causal relationship exists between the workplace accident and the treatment, and 2) the attending physician deems it necessary.  See Goad, 15 Va. App. at 714, 427 S.E.2d at 217-18.  The claimant, however, bears the burden of proving by a preponderance of the evidence that disputed treatment was medically necessary.  McGregor v. Crystal Food Corp., 1 Va. App. 507, 508, 339 S.E.2d 917, 918 (1986).

Since our decision in Goad, we have carved out some exceptions to the general rule requiring a causal connection between the compensable injury and the treatment.  Our case law has recognized both the doctrine of compensable consequences and the "two causes rule."

The doctrine of compensable consequences states:  "'When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows

from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.'" Morris v. Badger Powhatan/Figgie, Int'l., Inc., 3 Va. App. 276, 283, 348 S.E.2d 876, 879 (1986) (quoting A. Larson, The Law of Workmen's Compensation §§ 13 and 81.30). We have applied the doctrine in more than one context. See e.g. Williams Indus., Inc. v. Wagoner, 24 Va. App. 181, 189, 480 S.E.2d 788, 791-92 (1997) (requiring employer to compensate claimant for treatment of avascular necrosis of hips three years after claimant had back surgery for a compensable injury because claimant presented credible evidence that the original spinal injury had caused the necrosis); see also S. Iron Works v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993) (stating: "[a] finding that a pre-existing condition was 'accelerated or aggravated' by an injury sustained in an industrial accident establishes a causal connection between the injury and disability and the 'disability resulting therefrom is compensable under the Workers' Compensation Act'" (quoting Olsten of Richmond v. Leftwich, 230 Va. 317, 320, 336 S.E.2d 893, 895 (1985))).

The two causes rule "provides that a condition which has two causes, one related to a work injury, and one not, is compensable and the treatment of that condition will be the responsibility of the employer." Papco Oil v. Farr, 26 Va. App. 66, 75, 492 S.E.2d 858, 862 (1997) (citing Shelton v. Ennis Bus. Forms, Inc., 1 Va. App. 53, 55, 334 S.E.2d 297, 299 (1985)).

Claimant concedes on brief that his heart condition has no causal connection to his compensable hernia injury. We also find, based on the record, that claimant's heart condition is neither a compensable consequence of his hernia injury, nor is it a condition which would fall under the two causes rule. Therefore, we affirm the commission's holding that employer bears

no responsibility for the medical treatment claimant received for his heart condition prior to undergoing his hernia surgery.

B. The Decision in <u>Papco Oil v. Farr</u> Does Not Apply to the Facts of This Case

Both parties argue that our decision in <u>Papco</u> requires us to rule in their favor.[1] In <u>Papco</u>, we affirmed the commission's decision to hold an employer responsible for a portion of the treatment of a claimant's idiopathic thrombocytopenia (ITP). 26 Va. App. at 74, 492 S.E.2d at 862. The record in <u>Papco</u> included testimony from two of the claimant's treating physicians that although the cause of ITP is generally unknown, it was possible that the ITP was related to the treatment the claimant received for his compensable back injury. <u>Id.</u> at 71-72, 492 S.E.2d at 860-61.

In <u>Papco</u>, we made two specific findings to support our holding that "treatment of the ITP was a medically necessary adjunct to the successful completion of that care required by claimant's work-related back injury." <u>Id.</u> at 74, 482 S.E.2d at 862. First, we found that the claimant's treating physicians diagnosed the ITP "during medically necessary treatment of his compensable back injury." <u>Id.</u> The facts indicated that the claimant in <u>Papco</u> had already undergone one surgery for his compensable back injury before the physicians diagnosed his ITP. <u>Id.</u> at 69-70, 492 S.E.2d at 859. Second, we found: "[t]o continue treatment of claimant's back with further surgeries . . . claimant's physicians required *limited treatment* of the ITP to normalize [the claimant's] platelet count." <u>Id.</u> at 74, 492 S.E.2d at 862 (emphasis added). Notably, the commission did not require the employer to compensate the claimant in <u>Papco</u> for

---

[1] Employer and claimant also dispute the applicability of the commission's decision in <u>Ball</u>, No. 209-17-09 on brief. We decline to address <u>Ball</u> because the commission's opinions are not binding on this Court in any fashion, although they may potentially be persuasive in some cases. <u>See</u> <u>Pruden v. Plasser Am. Corp.</u>, 45 Va. App. 566, 580, 612 S.E.2d 738, 745 (2005).

each instance of treatment for the ITP, excluding a second hospitalization for treatment of the ITP and pleural effusion that occurred between the second and third back surgeries because "no medical evidence proved that this treatment for pleural effusion and ITP was causally related to the compensable work injury." Id. at 73, 492 S.E.2d at 861. The commission also did not require the employer to compensate the Papco claimant for the elective splenectomy he underwent to ultimately resolve the ITP following the third back surgery. See id.

Claimant's course of treatment in this case differs significantly from the claimant's course of treatment in Papco. Initially, as noted, the record contains no evidence that claimant's compensable injury caused his heart condition, and he admits that the two are completely unrelated. The evidence here indicates that claimant's heart condition was completely separate and distinct from his hernia injury, significantly dissimilar to the blood condition that the claimant in Papco developed, which may have been an accompaniment to the surgery for his compensable injury. Additionally, the claimant in Papco had already undergone one surgery for his compensable back injury when his treating physicians diagnosed the ITP. Here, claimant had not undergone his hernia surgery when Drs. Herrera and Sherber diagnosed him with coronary artery disease, identifying his need for immediate bypass surgery. He also failed to present any evidence that his physicians discovered his need for bypass surgery while in the midst of his hernia surgery. To the contrary, the record indicates that treatment of the hernia injury did not begin until more than six months *following* the bypass surgery. Therefore, we cannot conclude that treatment of claimant's heart condition was a medically necessary adjunct to the treatment of his compensable hernia injury.

We acknowledge that the Act is remedial in nature and should be liberally construed in favor of the worker. E.I. du Pont de Nemours & Co. v. Eggleston, 264 Va. 13, 17, 563 S.E.2d

685, 687 (2002). Our prior adoption of the compensable consequences doctrine and the two causes rule assists in effectuating the Act's remedial policy. They both recognize that workplace injuries take varying forms and can have lasting consequences, especially considering pre-existing conditions that an employee may have. We decline, however, to extend coverage to medical treatment for a pre-existing condition that has no causal connection whatsoever to a compensable workplace injury. Consequently, the commission was correct to deny claimant's request for coverage of cardiac surgery that resulted from his pre-existing coronary artery disease which he conceded was completely unrelated to his compensable workplace injury.

## III. CONCLUSION

For the foregoing reasons, we affirm the commission's decision.

Affirmed.