COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Senior Judge Haley
Argued at Fredericksburg, Virginia

UNPUBLISHED

PAUL M. PACHECO

MEMORANDUM OPINION* BY
v.      Record No. 0315-17-4        JUDGE JAMES W. HALEY, JR.
                                    NOVEMBER 28, 2017

J.P. MASONRY, INC. AND ACCIDENTAL FUND
  NATIONAL INSURANCE COMPANY

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Bryan G. Bosta (Becker, Kellogg & Berry, PC, on brief), for
appellant.

Rebekah M. Bofinger (Franklin & Prokopik, P.C., on brief), for
appellees.

Paul Pacheco (claimant) maintains that the Workers' Compensation Commission erred in

finding that a Endolite Blade XT prosthetic device (a running blade) was not medically

necessary. We affirm the Commission's ruling.

The Workers' Compensation Act "is highly remedial" and should be "liberally construed

to advance its purpose of compensating employees for accidental injuries resulting from the

hazards of the employment." Masonite Holdings, Inc. v. Cubbage, 53 Va. App. 13, 19-20, 668

S.E.2d 809, 812 (2008) (quoting Corporate Res. Mgmt. v. Southers, 51 Va. App. 118, 126, 655

S.E.2d 34, 38 (2008) (*en banc*)). However, under well-established principles, this Court

construes the evidence in the record, and all reasonable inferences, in the light most favorable to

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the party that prevailed below, which in this case is the employer.  See Stillwell v. Lewis Tree Serv., Inc., 47 Va. App. 471, 474, 624 S.E.2d 681, 682 (2006).

So viewed, the evidence established that claimant was injured in a work-related accident on March 2, 2012, which resulted in a below-the-knee amputation of his left foot.  He was awarded lifetime medical benefits and temporary partial disability benefits.  He also was given a prosthesis to replace his left foot and placed on light-duty work, which included restrictions of no frequent standing or walking.  Claimant had been physically active before his accident, running five days a week and participating in soccer, tennis, and basketball, as well as biking, climbing, skiing, snowboarding, and rafting, but he was unable to continue these activities after the accident.

On December 10, 2014, claimant sought approval for new prosthetic devices, an Elan Boot and an Endolite Blade XT.  Claimant's treating physician, Dr. Aaron Jones, recommended the Elan Boot because it "acts more like the human ankle and foot in that it moves up and down and has sensors to assist in uneven terrain and on stairs[,] . . . which would make walking easier and more efficient."  Dr. Jones said the Elan Boot was medically necessary because the prosthetic device claimant was then using had "a rigid ankle," which "over time" would "put more stress on his knees, hips and back leading to pain from early onset osteoarthritis."  Dr. Jones said claimant "would also benefit" from the Endolite Blade XT because it was "built for cross training activities," such as "working out at the gym, or running a marathon," and "would improve [claimant's] quality of life."

Claimant's prosthetist, Mr. Daniel Mejia, also recommended claimant be fitted with an "everyday prosthesis" having an Elan ankle and a "running/sports leg with an Endolite Blade XT" for sports because the everyday leg was subject to breakage if used for sporting activities.

An orthopedic surgeon, Dr. Steven Neufeld, conducted an independent medical evaluation on July 27, 2015, and concluded that an Endolite Blade XT was "only one way" to enable claimant to return to as "high a function as possible (closer to his pre-injury state)," but that a running blade was "not medically necessary for [claimant] to return to his stated pre-injury activities."

Claimant's employer agreed to authorize the Elan Boot, but opposed the request for the Endolite Blade XT on the grounds that it was not reasonable or necessary medical treatment.[1] After a hearing, a deputy commissioner determined that although a running blade "may be reasonable," there was no proof it was medically necessary. The deputy commissioner further said "[t]he purpose of the Act is to restore the employee's good health so that he may return to useful employment, not to return him to every pre-injury activity." The full Commission affirmed, and claimant appealed to this Court.[2]

Code § 65.2-603(A)(1) provides that "[a]s long as necessary after an accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician . . . and such other necessary medical attention." The statute further provides that where the employee loses a leg or foot as a result of the accident, as in this case, "the employer shall furnish prosthetic or orthotic appliances, . . . proper fitting and maintenance thereof, and training in the use thereof, as the nature of the injury may require." Claimant argues that the Commission erred in finding the running blade claimant requested was not needed to return him to useful employment and thus was not medically necessary. Claimant contends the running

---

[1] The employer also agreed to compensate claimant for additional injuries to his right ankle and foot as consequences of his original injury.

[2] In his notice of appeal, claimant challenged the sufficiency of the evidence supporting the Commission's ruling, but he has not pursued the claim in his opening brief. Thus, it is waived. See Rule 5A:20(e).

blade was medically necessary because he was entitled to be restored as closely as possible to his pre-injury functioning. He asserts his employer was obligated to provide the running blade because his treating physician had determined it would improve the overall quality of claimant's life.

"Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding upon this Court." VFP, Inc. v. Shepherd, 39 Va. App. 289, 292, 572 S.E.2d 510, 511 (2002) (quoting WLR Foods v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997)). "[W]hether the disputed medical treatment was necessary within the meaning of Code § 65.2-603 is a mixed question of law and fact." Portsmouth (City of) Sch. Bd. v. Harris, 58 Va. App. 556, 563, 712 S.E.2d 23, 26 (2011) (quoting Lynchburg Foundry Co. v. Goad, 15 Va. App. 701, 712-13, 427 S.E.2d 215, 217 (1993)). As such, we review the Commission's rulings *de novo*. See id.

An employer has a mandatory, statutory duty to compensate an injured employee for medical expenses causally related to the injury, but any recommended treatment must be "reasonable, necessary, and related to the industrial accident." Dunrite Transmission v. Sheetz, 18 Va. App. 647, 649, 446 S.E.2d 473, 474 (1994). When a claimant requests specific medical treatment, he must demonstrate that the treatment "is causally related to the accident, is necessary for treatment of his compensable injury, and is recommended by an authorized treating physician." Harris, 58 Va. App. at 563, 712 S.E.2d at 26.

Claimant has not made the requisite showing because he failed to prove the Endolite Blade XT was medically necessary. See Haftsavar v. All Am. Carpet & Rugs, Inc., 59 Va. App. 593, 599, 721 S.E.2d 804, 807 (2012) (stating claimant "must prove by a preponderance of the evidence that disputed treatment was medically necessary"). Claimant testified at the hearing before the deputy commissioner that a running blade would enable him to build muscle mass and

strength in his left leg, but neither claimant's treating physician nor his prosthetist cited these factors in their recommendations. Dr. Jones said merely that the blade "would be extremely beneficial" in improving claimant's quality of life, and Mejia said the blade was needed only for sports activities; but they did not say a running blade was medically necessary. In contrast, Dr. Jones provided specific reasons that the Elan Boot was medically necessary "to improve [claimant's] gait while decreasing the stress on his sound side" and would aid in preventing "early onset osteoarthritis." Dr. Neufeld, who independently evaluated claimant, also opined that a running blade was not medically necessary. He further stated the Endolite Blade XT was "only one way" to return claimant to a level closer to his pre-injury functioning and said he "would defer to a certified prosthetist for other recommendations."

The stream of evidence can rise no higher than its headwaters. Here, those headwaters are Dr. Jones' report. He contrasted in separate statements what was medically necessary and what was beneficial. Thus, claimant did not prove the running blade he requested was medically necessary, and his employer was not financially obligated to provide the blade.[3] See Haftsavar, 59 Va. App. at 602-03, 721 S.E.2d at 809 (holding that employer was not required to pay for employee's heart surgery, the necessity for which was discovered as employee was preparing for surgery connected to his compensable work injury, but was not causally related to his work injury); ARA Servs. v. Swift, 22 Va. App. 202, 208, 468 S.E.2d 682, 685 (1996) (holding that

---

[3] In support of his argument, claimant relies on Vazques v. Henry Cty. Pallet Co., VWC File No. 217-62-06, 2006 VA Wrk. Comp. LEXIS 678 (Va. Wrk. Comp. Aug. 2, 2006), in which the Commission ruled that the employer was responsible for providing the injured employee with a myoelectric arm. The medical evidence contained in the record sufficiently proved that the arm was a reasonable and necessary treatment because the employee had experienced residual limb pain and limited range of motion with his initial prosthetic arm. Claimant's request for a new prosthesis that did not have a rigid ankle, the Elan Boot, was approved because it was based on medical necessity, but his request for a running blade was based on his desire to participate in the same sports he participated in before his injury. Because there was no evidence a running blade was medically necessary, Vazques is inapposite.

employer had to pay for home exercise station for injured employee because employee's doctor prescribed device as medically necessary); Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 200, 336 S.E.2d 903, 906 (1985) (holding that where employee suffered head injury at work that affected his vision, employer had to pay for employee's subsequent eye examination and new glasses because they were causally related to the injury and medically necessary).

Furthermore, the purpose of workers' compensation is not to restore the injured employee completely to his pre-injury state, but to compensate him for injuries that "either actually or presumptively produce disability and thereby presumably affect earning power . . . ." 1-1 Larson's Workers' Compensation Law § 1.03 (2017). See Richmond Mem'l Hosp. v. Allen, 3 Va. App. 314, 318, 349 S.E.2d 419, 422 (1986) (stating that one purpose of Code § 65.2-603 is "to restore the employee's good health 'so that he may return to useful employment as soon as possible'" (quoting Immer & Co. v. Brosnahan, 207 Va. 720, 724, 152 S.E.2d 254, 257 (1967))). Providing a running blade to enable claimant to participate in sporting activities falls "outside the range of benefits provided" in the workers' compensation statutes. Salem v. Colegrove, 228 Va. 290, 294, 321 S.E.2d 654, 656 (1984) (holding that where injured employee's doctor had recommended "job retraining," employee was not entitled to reimbursement for his expenses because college program employee wanted to pursue exceeded doctor's general recommendation and doctor had never suggested such a program was medically necessary); see also Harris, 58 Va. App. at 560, 566-67, 712 S.E.2d at 24, 28 (holding that employer was not required to provide employee with a six-person home spa pool based on opinion of employee's treating physician that employee "would benefit from a spa pool/heater . . . to decrease pain").

One cannot but be empathetic to the grievous injury claimant suffered. But empathy does not allow a court to expand legislative parameters and the prior adjudications of the scope of those parameters. Accordingly, we affirm the Commission's ruling.

<u>Affirmed.</u>