A Rehearing <u>En</u> <u>Banc</u> was granted in this case on July 31, 1996.

COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Bray
Argued at Richmond, Virginia


THE GREIF COMPANIES/GENESCO, INC. and
 ST. PAUL FIRE AND MARINE
 INSURANCE COMPANY

                                          OPINION BY
v.        Record No. 0991-95-3      JUDGE JERE M. H. WILLIS, JR.
                                          JUNE 18, 1996
BARBARA JEAN HENSLEY,
 THE GREIF COMPANIES/GENESCO, INC. and
 LIBERTY MUTUAL FIRE INSURANCE COMPANY


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Joseph C. Veith, III (Montedonico, Hamilton &
            Altman, P.C., on briefs), for appellants.

            A. Thomas Lane, Jr., for appellee Barbara
            Jean Hensley.

            J. David Griffin (Fowler, Griffin, Coyne &
            Coyne, P.C., on brief), for appellees The
            Greif Companies/Genesco, Inc. and Liberty
            Mutual Fire Insurance Company.


        Greif Companies and St. Paul Fire and Marine Insurance

Company (St. Paul) appeal the decision of the Virginia Workers'

Compensation Commission awarding benefits to Barbara J. Hensley.

 St. Paul contends that the commission erred (1) in failing to

find that Ms. Hensley's right carpal tunnel syndrome (CTS) was a

new injury, (2) in refusing to set aside the April 12, 1994 award

on the ground of mutual mistake, and (3) in holding St. Paul and

Liberty Mutual Fire Insurance Company (Liberty) jointly

responsible for the disability benefits awarded Ms. Hensley.

Liberty contends that St. Paul's appeal should be dismissed

because St. Paul failed in its notice of appeal to name Greif Companies as an appellee and to provide the information required by Rule 5A:11(b).

In August, 1992, Ms. Hensley was diagnosed as suffering from carpal tunnel syndrome (CTS) of the right wrist. At that time, she had been employed by Greif for twenty-six years. For the preceding eleven years, she had performed piece work as a sewing machine operator, sewing armholes into coats. This activity required use of both hands. St. Paul was Greif's workers' compensation carrier at that time. St. Paul accepted Ms. Hensley's claim as compensable and paid her temporary total disability compensation from August 31, 1992 through January 3, 1993, pursuant to an agreement of the parties and an award of the commission.

In October, 1992, Dr. G. Edward Chappell, Jr. performed a carpal tunnel release and an anterior wrist synovectomy on Ms. Hensley's right wrist. In January, 1993, she returned to work at Greif. On June 23, 1993, she was awarded compensation for a five percent permanent partial disability.

On March 11, 1994, Ms. Hensley returned to Dr. Chappell, complaining of pain and numbness in her right wrist. Dr. Chappell reported, "I believe that she has recurrent carpal tunnel syndrome stemming from her previous problem with this condition." He restricted her to performing no piece work. Ms. Hensley has not worked since March 14, 1994.

Ms. Hensley notified St. Paul's representative, Ms. Decker, of her recurrent CTS and of her unemployment. St. Paul agreed to reinstate Ms. Hensley's compensation for temporary total disability. On April 12, 1994, the commission entered an award memorializing that agreement.

On April 25, 1994, Ms. Hensley reported to Dr. Chappell that she suffered pain and numbness in her left wrist. Nerve conduction studies revealed bilateral CTS. At that time, Liberty had assumed Greif's workers' compensation coverage.

When Ms. Decker learned of the left CTS, she questioned whether the current right CTS was a new injury or a change in condition. She contacted Susan Wolf, a rehabilitation nurse consultant, who sent a questionnaire to Dr. Chappell, asking him,

> Do you feel this is a new problem for Mrs. Hensley given the fact that she performed her regular job for 14 months without problems and now has a positive EMG bilaterally?

Dr. Chappell checked, "yes." St. Paul then filed an application for hearing, seeking to have the April 12, 1994 award set aside and a determination made as to whether the current right CTS was a new condition or a recurrence of the 1992 condition.

Dr. Chappell was asked to clarify his answer on the questionnaire. In response, he stated:

> I checked yes because she did not have problems for several months. This is a somewhat problematic situation, and it depends on how you define "new." I believe that there was some permanency as a consequence of her having carpal tunnel syndrome in 1992 and requiring surgery, and I am on record as recognizing a 5 percent

> permanent partial physical impairment for her right hand. . . . I believe that this condition would tend to leave her hand more vulnerable to continued piece work, and in that way it can be recognized as a continuation of the problem that she had back in 1992.
>
> Although . . . the fact that she was symptom-free for at least 6 months and then started having problems again indicates that this was a "new problem."

On June 21, 1994, Ms. Hensley applied for a hearing, alleging bilateral CTS. She contended that Liberty was responsible for the CTS in both wrists or, alternatively, that both wrist conditions resulted from her 1992 condition, for which St. Paul was responsible. St. Paul amended its application for hearing, alleging that the April 12, 1994 award should be set aside because of a mutual mistake of fact. St. Paul also requested that Liberty be added as a defendant, because Liberty was the current workers' compensation carrier for Greif.

The deputy commissioner found that Ms. Hensley's right CTS was a change in condition attributable to her 1992 condition, for which St. Paul was responsible. He found that her left CTS was a new injury, for which Liberty was responsible. Because the right condition predated the left, he ordered that, pursuant to Code § 65.2-506, the award against St. Paul be suspended and compensation be paid by Liberty until Ms. Hensley's left CTS was resolved. He also ordered Liberty to reimburse St. Paul for its payments of compensation to Ms. Hensley after June 10, 1994.

On review, the full commission affirmed the deputy

commissioner's findings regarding the right and left CTS. The commission further found that Ms. Hensley's total disability was "due partially to her right hand condition and partially to the left. It cannot be determined which condition is predominately disabling." The commission awarded temporary total disability benefits to Ms. Hensley and ordered St. Paul and Liberty each to pay one-half. Liberty was also ordered to reimburse St. Paul for one-half of any compensation paid after May 19, 1994. St. Paul was ordered to pay for the cost of medical treatment for the right CTS and Liberty was ordered to pay the cost of medical treatment for the left CTS. This appeal followed.

I.

We first address the motion to dismiss. Rule 5A:11(b) states, in pertinent part:

> No appeal from an order of the Commission shall be allowed unless, within 30 days after entry of the order appealed from . . . counsel files with the clerk of the Virginia Workers' Compensation Commission a notice of appeal which shall state the names and addresses of all appellants and appellees and the names, addresses, and telephone numbers of counsel for each party . . . .

On its notice of appeal, St. Paul failed to list Greif as an appellee. However, no party to this appeal was prejudiced by that omission. Greif and its counsel were listed as appellants. All necessary parties were before the commission and are presently before this Court. This case is distinguishable from Zion Church Designers & Builders v. McDonald, 18 Va. App. 580,

445 S.E.2d 704 (1994), in which a necessary party received no notice of the appeal and therefore was unable to protect its interests.  In this case, all necessary parties have been present and have participated at all stages of the proceedings.  The motion to dismiss is denied.

II.

St. Paul first contends that the evidence is insufficient to support the commission's finding that Ms. Hensley's right wrist symptoms resulted from a change in condition relating to her original 1992 CTS.  St. Paul argues that the evidence proves, as a matter of law, that Ms. Hensley's right CTS is a new condition.  It notes that Dr. Chappell checked, "yes," when asked whether the "problem" was new.  However, Dr. Chappell also explained that "the problem" was new because Ms. Hensley had been symptom free for six months.  The record supports the commission's conclusion.

"The Commission's findings of fact are conclusive and binding on this court if supported by credible evidence." Russell Loungewear v. Gray, 2 Va. App. 90, 92, 341 S.E.2d 824, 825 (1986).  This rule applies when an expert's opinion contains internal conflict.  See Chandler v. Schmidt Baking Co., 228 Va. 265, 321 S.E.2d 296 (1984).  Dr. Chappell's opinion sufficiently supports the commission's finding that Ms. Hensley's right CTS was a change in condition.  Dr. Chappell stated that "she has recurrent carpal tunnel syndrome stemming from her previous problem with this condition" and that her CTS was "a continuation

of the problem that she had back in 1992." He explained that his answer, "yes," to the question whether Ms. Hensley's right CTS was a new problem, related to a reoccurrence of symptoms following a period of remission, not to the question of causation.

### III.

Our holding that the record supports the commission's finding that Ms. Hensley's right CTS represented a change in the condition of her original 1992 CTS moots St. Paul's contention that the April 12, 1994 award should be set aside because of a mutual mistake of fact.

### IV.

St. Paul and Ms. Hensley contend that the commission's equal division of liability for payment of benefits between St. Paul and Liberty violates Code § 65.2-506. Liberty contends that it should not be required to pay disability benefits for the left CTS because no evidence proves that the left CTS is itself disabling and because Ms. Hensley is receiving temporary total disability for her right CTS.

The commission found "that [Ms. Hensley's] current total disability, commencing June 10, 1994, is due partially to her right-hand condition and partially to the left. It cannot be determined which condition is predominately disabling." The commission, thus, made no finding that either CTS was totally disabling, but found that the two together caused total

- 7 -

disability.  The total disability resulting from the bilateral CTS was the basis for an award of compensation pursuant to Code § 65.2-500.  Either CTS alone, causing only partial incapacity, might provide the basis for an award under Code § 65.2-502.

> Code § 65.2-506 provides, in pertinent part:
> If an employee receives an injury for which compensation is payable while he is still receiving or entitled to compensation for a previous injury in the same employment, he shall not at the same time be entitled to compensation for both injuries. . . . [I]f, at the time of the second injury, he is receiving compensation under the provisions of § 65.2-502, then no compensation shall be payable on account of the first injury during the period he receives compensation for the second injury.

Code § 65.2-506 sets forth a statutory scheme requiring payment of compensation for multiple injuries in inverse order of occurrence, the injury last suffered being first compensated. Ms. Hensley's disability in her right wrist derived from her 1992 CTS.  Her left wrist disability related to a CTS that developed later and was first diagnosed in May, 1994.  Because the left CTS contributes to Ms. Hensley's total incapacity, the left CTS may properly be considered the basis for a total incapacity award pursuant to Code § 65.2-500.  See Smith v. Fieldcrest Mills, Inc., 224 Va. 24, 28-29, 294 S.E.2d 805, 808 (1982).  By operation of Code § 65.2-506, compensation for the later injury must be paid first.  When that compensation is exhausted, or when the left wrist condition ceases to impose incapacity, compensation for the right wrist condition will resume, if

justified.[1]

At the time Ms. Hensley's left CTS was diagnosed, St. Paul was paying her temporary total disability benefits, pursuant to Code § 65.2-500, in accordance with their agreement memorialized in the award of April 12, 1994. At the time her left CTS was diagnosed, Ms. Hensley was not receiving compensation under Code § 65.2-502. Thus, this case does not fit precisely into the language of § 65.2-506. However, this case does not involve injuries that resulted from sudden precipitating events, but rather conditions that developed gradually. Unquestionably, Ms. Hensley's left CTS developed during her time of active employment, a time when she was not receiving compensation. Yet, at the same time, her earlier disease in the right wrist was developing toward reassertion. Code § 65.2-506 expresses the legislative approach to multiple contributing injuries. We think that same approach, and the required time frame, are appropriate to this case.

We hold that the commission erred in assessing liability for Ms. Hensley's compensation equally to St. Paul and Liberty. The commission should have applied the rationale of Code § 65.2-506 and have held Liberty liable from the time Ms. Hensley's left CTS was diagnosed.

_____

[1]In The Stenrich Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996), issued after the commission's decision in this case, the Virginia Supreme Court held that carpal tunnel syndrome, derived from repetitive motion trauma, is not a compensable condition under the Virginia Workers' Compensation Act.

The judgment of the commission is reversed and this case is remanded for entry of an award requiring Greif and Liberty to pay required compensation for the duration of Ms. Hensley's present condition and adjusting payments made between the insurance companies, in accordance with the provisions of this opinion. The commission is further directed to consider the applicability and effect of The Stenrich Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996), on the rights of the parties in this case.

Reversed and remanded.

Benton, J., concurring and dissenting.


I concur in Parts I, II, and III of the opinion and in the decision to remand based upon the Supreme Court's decision in The Stenrich Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996). Because I would uphold the commission's decision to equally divide between the insurers the liability for total disability caused by two separate injuries, I do not join in Part IV of the opinion.

The majority opinion applies Code § 65.2-506 in reversing the commission's decision. That statute reads as follows:

> If an employee receives an injury for which compensation is payable while he is still receiving or entitled to compensation for a previous injury in the same employment, he shall not at the same time be entitled to compensation for both injuries, but if he is, at the time of the second injury, receiving compensation under the provisions of § 65.2-503, payments of compensation thereunder shall be suspended during the period compensation is paid on account of the second injury, and after the termination of payments of compensation for the second injury, payments on account of the first injury shall be resumed and continued until the entire amount originally awarded has been paid. However, if, at the time of the second injury, he is receiving compensation under the provisions of § 65.2-502, then no compensation shall be payable on account of the first injury during the period he receives compensation for the second injury.

Code § 65.2-506.

The initial clause in the statute expresses the general view that an employee shall not be entitled to double compensation

- 11 -

that might enrich the employee.  See Robinson v. Salvation Army, 20 Va. App. 570, 459 S.E.2d 103 (1995).  The express language of Code § 65.2-506 does not include, however, a first injury causing total disability.  I believe that omission was purposeful.  The statutory framework implicitly contemplates that the first injury does not result in total disability because it is premised upon the view that the employee is in fact employed when the second injury occurs.  A person who is totally disabled is not employable.

Pursuant to the first sentence in Code § 65.2-506, an employee receiving compensation for permanent partial loss or permanent total loss from the first injury receives all of the payments that are due under Code § 65.2-503, because payments are only suspended while the employee is being paid compensation for a second injury.  After the payment for the second injury ends, payment for permanent partial loss or permanent total loss resumes and continues "until the entire amount originally awarded has been paid."  Code § 65.2-506.  Thus, the employee receives the entire amount of both awards but not at the same time.  No double dipping occurs because loss under Code § 65.2-503 is permanent.  Indeed, Code § 65.2-503(F) specifically allows certain other compensation to be paid while compensation is paid pursuant to Code § 65.2-503.

Under the second sentence of Code § 65.2-506, if the employee is receiving compensation under Code § 65.2-502 for

- 12 -

partial incapacity (i.e., presumably the employee is working or able to work) and suffers a second injury, the employee must be paid compensation for the second injury, whether partial or total incapacity, and "no compensation shall be payable on account of the first injury during the period he receives compensation for the second injury." Code § 65.2-506. The commission has consistently ruled that the statute should not be applied in a way that financially penalizes an employee "as the result of having suffered two unfortunate injuries in separate industrial accidents while working for the same employer." Donahue v. Clark Electric Contractors, Inc., 68 O.I.C. 256, 258 (1989). Clearly, the legislative "intent was to bar the payment of compensation for successive injuries in the same work which might result in a double recovery or at least a compensation rate which exceeds the pre-injury average weekly wage." Id.

If, as the majority assumes, Code § 65.2-506 applies when the first injury is totally disabling, then whenever an employee experiences a second injury, which is less disabling (i.e., partial) the compensation for the second injury would supplant the compensation payments for the first injury. This could result in the anomaly of an employee receiving less compensation (i.e., payment for the partial disability) than he is entitled to receive for the total disability he continues to suffer.

In this case, the employee had a first injury that was totally disabling and a second injury that also was totally

disabling. The commission found "that the claimant's current <u>total</u> disability . . . is due partially to her right hand condition and partially to the left. It cannot be determined which condition is predominately disabling." Obviously, the employee can receive only one payment.

Different insurance companies provided coverage during the separate periods when the two injuries occurred. Because both injuries are totally disabling, the commission made a sound decision to require the insurers to share the risk during the total incapacity caused by the two injuries. The commission did not err in concluding that using the scheme of Code § 65.2-506 in the instance where the first injury is totally disabling causes a result that is unfair to the employee. I believe that this unfairness is manifestly the reason that the statute did not address the instance where the first injury was totally disabling. <u>See</u> <u>Donahue</u>, 68 I.O.C. 256 (dividing liability between two insurers when two separate injuries, each occurring under a different insurer, resulted in total disability).