COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Senior Judge Willis
Argued at Alexandria, Virginia

PUBLISHED

S&S ELECTRIC, INC. AND HARTFORD
  CASUALTY INSURANCE COMPANY

                                                      OPINION BY
v.        Record No. 1556-12-4             JUDGE RANDOLPH A. BEALES
                                                    MARCH 12, 2013

MICHAEL MARKULIK AND CENTRAL
  MUTUAL INSURANCE COMPANY

          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Richard L. Butler (Law Office of Jonathan P. Jester, on briefs), for
          appellants.

          Andrew S. Kasmer for appellee Michael Markulik.

          Jessica A. Gorman (Kalbaugh Pfund & Messersmith, on brief), for
          appellee Central Mutual Insurance Company.


     In this coverage dispute between two insurance carriers,[1] the Workers' Compensation

Commission (the commission) addressed the following issue:  "to which claim we should assign

the payment of benefits where the claimant is totally disabled as a result of two separate

conditions, both of which involve the same employer and both of which independently are

compensable."  The commission found that Hartford Casualty Insurance Company (Hartford) –

not Central Mutual Insurance Company (Central) – was responsible for the payment of the

claimant's ongoing temporary total disability benefits because Hartford was the insurer that was

_____

     [1] During the pendency of this appeal, claimant's counsel filed a request for expedited
review by this Court.  In this request, claimant's counsel represents that claimant "has lost his
home as a result of not receiving any income for more than a year" and "is currently homeless."
We have expedited our review in light of claimant's circumstances.

liable for the claimant's most recent compensable condition. Hartford now appeals that finding. Finding no error, we affirm the commission's decision for the following reasons.

## I. BACKGROUND

On all dates relevant to compensability, Michael Markulik (claimant) was employed as an electrician for S&S Electric, Inc. (S&S Electric). Until April 14, 2011, Central was S&S Electric's workers' compensation insurance carrier. Thereafter, Hartford assumed workers' compensation insurance coverage for S&S Electric.

## A. RELEVANT MEDICAL EVIDENCE

On March 19, 2011, claimant suffered an electrical shock injury while he was installing a new transformer. After experiencing numbness in his right arm for about ten or fifteen minutes, claimant felt a persistent burning sensation in his right arm. Claimant was referred to a neurologist, Dr. Patrick Capone, and claimant has been held out of work since May 7, 2011.

Dr. Capone initially treated claimant solely for right arm neuropraxia.[2] For purposes of this appeal, it is undisputed that claimant's right arm neuropraxia resulted from the March 19, 2011 electrical shock accident, that it is a compensable injury, and that Central is the insurer responsible for this injury.

During the course of his treatment of claimant, Dr. Capone also came to believe that claimant suffered from carpal tunnel syndrome. On May 31, 2011, Dr. Capone indicated that claimant reported "burning discomfort in his right upper arm with weakness and discomfort in his right hand where he drops things" as well as "similar, although less severe discomfort in his left hand when he extends it forward." Dr. Capone assessed claimant's symptoms accordingly:

> *Right arm pain and numbness. This appears to be multifactorial.*
> The patient has objective evidence of a right radial sensory
> neuropathy in his right upper arm. This is most likely due to

_____

[2] Some documents in the commission record also refer to this condition as neurapraxia. For purposes of this opinion, we adopt the spelling used by the commission.

neurapraxia from the electrical injury which occurred in his upper arm. The patient has concomitant right carpal tunnel syndrome with some distal ulnar involvement according to the EMG study. This is less likely due to the electrical injury and more likely associated with his employment as an electrician. *His new left distal arm and hand complaint is also more likely carpal tunnel in etiology* although we have not confirmed that at present with an EMG and nerve conduction study.

(Emphasis added). At that time, Dr. Capone mentioned the possibility of claimant undergoing a carpal tunnel decompression procedure. Following a July 13, 2011 appointment, when claimant reported that he "cannot use either arm," Dr. Capone indicated that an EMG of claimant's left arm and a referral to a neurosurgeon were required.

Dr. Shabih Hasan, a neurologist, conducted an independent medical examination of claimant on August 16, 2011. Dr. Hasan found "symptoms indicative of neurapraxic nerve injury resulting in paresthesia and pain in the right arm," which were "most likely related to electrical shock trauma" claimant received during the March 19, 2011 workplace accident. Dr. Hasan also found that claimant's "electromyogram exam shows bilateral carpal tunnel of moderate severity," which presented itself "more on the right than left," and was "most likely related to underlying repetitive use of the wrist and hand and not related to the electrical shock injury."[3]

On September 7, 2011, Dr. Capone diagnosed claimant with *two* conditions – (1) "right arm neurapraxia secondary to electrical injury," *and* (2) "bilateral carpal tunnel syndrome." Dr. Capone signed a disability slip indicating that claimant was still unable to work, although he did not indicate which specific condition was causing the continuing disability or how the two conditions precisely contributed to claimant's continuing disability.

---

[3] "As for prognosis for [the] electrical shock injury," Dr. Hasan wrote, "usually neurapraxic injuries improve in a few months and would be unusual to last more than six months." Dr. Hasan noted that claimant "is currently quite symptomatic from [the] underlying carpal tunnel, which may need further relief from surgical intervention if medical management does not improve his symptoms."

In responses to questionnaires from counsel dated October 26, 2011 and November 15, 2011, Dr. Capone ruled out all causes other than claimant's employment as an electrician for claimant's bilateral carpal tunnel syndrome and indicated that this condition was a direct result of his longstanding history of employment as an electrician. For purposes of this appeal, it is undisputed that claimant proved by clear and convincing evidence that his bilateral carpal tunnel syndrome is a compensable ordinary disease of life under Code § 65.2-401[4] and that Hartford is the insurer responsible for this compensable condition under Code § 65.2-404.[5]

On November 22, 2011, Dr. Capone signed a disability slip indicating that claimant remained "off work until further notice due to carpal tunnel syndrome and electrical shock injury." This disability slip is the first evidence in the commission record of Dr. Capone excusing claimant from work at least in part due to his carpal tunnel syndrome.[6]

---

[4] The Workers' Compensation Act expressly states that carpal tunnel syndrome is an "ordinary disease[] of life as defined in [Code] § 65.2-401." Code § 65.2-400(C). For an ordinary disease of life to be compensable under Code § 65.2-401, a claimant must prove several elements by "clear and convincing evidence," i.e., "not a mere probability . . . ." Code § 65.2-401. Claimant's proof of those elements by clear and convincing evidence is not an issue in this appeal.

[5] Code § 65.2-404(A) states,

> When an employee has an occupational disease that is covered by this title, the employer in whose employment he was last injuriously exposed to the hazards of the disease and the employer's insurance carrier, if any, at the time of the exposure, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier.

Hartford's liability under this statute for claimant's bilateral carpal tunnel syndrome is not an issue in this appeal.

[6] On December 7, 2011, Dr. Capone indicated that claimant's right arm neuropraxia was "stable" and that claimant was still "awaiting carpal tunnel decompression *so that this gentleman can return to some type of employment*." (Emphasis added). However, Dr. Capone's disability slip from that date referenced only the March 19, 2011 electrical shock accident. On January 17, 2012, Dr. Capone signed a disability slip indicating that claimant was "[o]ff work until further notice due to electrical shock injury." This disability slip did not mention claimant's bilateral

- 4 -

B. COMMISSION PROCEEDINGS

Following a hearing, the deputy commissioner found that claimant "has proven total disability since May 7, 2011 and continuing," that "the disability was initially related solely to the right arm injury sustained on March 19, 2011," and that "the ongoing disability is *causally related to both* the right arm nerve injury and the compensable bilateral carpal tunnel syndrome." (Emphasis added). The deputy commissioner held that Central was "responsible for payment of ongoing temporary total disability under the two causes rule." Central sought review of the deputy commissioner's decision from the full commission – contending, *inter alia*, that the two causes rule was inapplicable to the facts of this case.

In its unanimous review opinion, the commission adopted the deputy commissioner's factual findings[7] – *but expressly disagreed* with the deputy commissioner's legal analysis. The commission found that the deputy commissioner's "analysis under the two-causes rule is problematic since the right arm injuries and the carpal tunnel syndrome both are compensable." Instead, the commission found that Hartford was responsible for claimant's ongoing temporary total disability payments under Code § 65.2-506 – as well as under this Court's decision in The Greif Companies v. Hensley, 22 Va. App. 546, 471 S.E.2d 803 (1996), and the Supreme Court's opinion in E.I. de Pont de Nemours & Co. v. Eggleston, 264 Va. 13, 563 S.E.2d 685 (2002), both of which interpreted Code § 65.2-506.

---

carpal tunnel syndrome – even though, according to the record on appeal, claimant had not yet undergone carpal tunnel decompression surgery by the close of the evidence in the commission proceedings.

[7] Among its factual determinations, the commission concluded that the deputy commissioner "properly found [claimant] was disabled in part from his compensable work injuries from the March 19, 2011 work accident and in part from his compensable ordinary disease of life." The commission also agreed with the deputy commissioner that claimant's "disability is attributable to both compensable conditions."

- 5 -

The commission explained:

> Based upon the findings in <u>Henlsey</u> and <u>Eggleston</u>, we hold that *if the employee's disability is related in part to the original work accident and in part to a second, subsequent compensable condition, ongoing compensation benefits may be assigned to the latter, second claim until disability therefrom abates.*[8] Since we have concluded [claimant's] disability is related in part to the original work accident and in part to the subsequent compensable ordinary disease of life then [claimant's] temporary total disability entitlement should be assigned to the second claim for his bilateral carpal tunnel syndrome.

(Emphasis added). Therefore, the commission held Hartford responsible for payment of claimant's temporary total disability benefits beginning on November 22, 2011 (the first date Dr. Capone signed a disability slip referencing bilateral carpal tunnel syndrome) and continuing.

## II. ANALYSIS

In its assignment of error on appeal, Hartford asserts that the commission "applied the incorrect legal analysis to the facts of this case" when it reversed the deputy commissioner's finding that Central (rather than Hartford) was responsible for payment of ongoing temporary total disability benefits to claimant. Hartford contends in its assignment of error that the commission "incorrectly applied" Code § 65.2-506 and "disregarded the 'two causes rule.'" Thus, Hartford raises an issue of law. In <u>Minor v. Aramark/VCU</u>, 59 Va. App. 622, 721 S.E.2d 818 (2012), this Court stated, "Although this Court generally gives deference to the

---

[8] In this case, there is no dispute that claimant's bilateral carpal tunnel syndrome (for which Hartford is liable) is a more recent compensable injury or condition than his right arm neuropraxia. The commission expressly found that the diagnosis of bilateral carpal tunnel syndrome was first communicated to claimant for purposes of Code § 65.2-403 on September 7, 2011 (nearly six months after the electrical shock accident that caused claimant's right arm neuropraxia) and that claimant's bilateral carpal tunnel syndrome was, therefore, claimant's "subsequent" compensable injury or condition. See Code § 65.2-403(A) (explaining that "first communication of the diagnosis of an occupational disease to the employee or death of the employee resulting from an occupational disease as herein listed and defined shall be treated as the happening of an injury by accident"). Furthermore, Hartford expressly acknowledges on brief that Central is the insurer responsible for claimant's first compensable injury or condition and that Hartford is the insurer responsible for claimant's second compensable injury or condition.

- 6 -

commission's construction of the Workers' Compensation Act on appeal, 'we are not bound by the commission's legal analysis in this or prior cases.'" Id. at 628-29, 721 S.E.2d at 822 (quoting Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 248, 563 S.E.2d 368, 372 (2002)). Therefore, we review the commission's decision *de novo*. Id. at 623, 721 S.E.2d at 822.

## A. CODE § 65.2-506

Here, the commission found that Hartford was responsible for claimant's ongoing temporary total disability benefits payments under Code § 65.2-506, which states:

> *If an employee receives an injury for which compensation is payable while he is still receiving or entitled to compensation for a previous injury in the same employment, he shall not at the same time be entitled to compensation for both injuries*, but if he is, at the time of the second injury, receiving compensation under the provisions of § 65.2-503, payments of compensation thereunder shall be suspended during the period compensation is paid on account of the second injury, and after the termination of payments of compensation for the second injury, payments on account of the first injury shall be resumed and continued until the entire amount originally awarded has been paid. However, if, at the time of the second injury, he is receiving compensation under the provisions of § 65.2-502, then no compensation shall be payable on account of the first injury during the period he receives compensation for the second injury.

(Emphasis added). In Eggleston, 264 Va. at 19, 563 S.E.2d at 688, the Supreme Court stated that Code § 65.2-506 contains a "prohibition against paying benefits for more than one injury at a time."[9]

---

[9] Given the Supreme Court's statement that Code § 65.2-506 "provides that a claimant may not receive compensation for more than one injury at a time," Eggleston, 264 Va. at 19, 563 S.E.2d at 688, the commission correctly determined that it was required to find *which* insurer – Central *or* Hartford – was responsible for payment of claimant's ongoing temporary total disability benefits. See also Hensley, 22 Va. App. at 554, 471 S.E.2d at 807 (holding that the commission erred in assessing liability for Hensley's compensation for two separate compensable injuries equally between two different insurers). Although claimant's temporary total disability related *both* to his right arm neuropraxia *and* his bilateral carpal tunnel syndrome, the commission simply could not, under authority from the Supreme Court and from this Court that is binding on the commission, assign claimant's temporary total disability benefits partly to Central and partly to Hartford.

Hartford challenges the commission's application of Code § 65.2-506 to the facts of this case. Hartford contends that this statute only applies when the second injury to a claimant occurs while the claimant is already receiving compensation for a permanent disability under Code § 65.2-503 or compensation for a partial disability under Code § 65.2-502. Hartford contends that neither of these conditions was met here. However, Hartford fails to show that the commission erred as a matter of law given its reliance on this Court's opinion in Hensley, which applied Code § 65.2-506 to circumstances very similar to this case.

## B. THE HENSLEY DECISION

### 1. THE CIRCUMSTANCES IN HENSLEY

Hensley also involved two separate compensable injuries for which two different workers' compensation insurance carriers were responsible.[10] The commission found that Hensley's compensable right wrist carpal tunnel syndrome was a recurrence of an earlier injury (for which the first insurer was responsible) and that her compensable left wrist carpal tunnel syndrome was a new compensable condition (for which the second insurer was responsible). Finding that Hensley had proven temporary total disability, but noting that the evidence did not establish which compensable condition predominantly caused Hensley's disability, the commission ordered both insurers to pay Hensley's temporary total disability benefits equally. 22 Va. App. at 550-51, 471 S.E.2d at 805-06.

---

[10] Hensley was initially diagnosed with right wrist carpal tunnel syndrome, which the first insurer accepted as compensable. The first insurer agreed to pay Hensley a period of temporary total disability benefits for the right wrist condition. When Hensley returned to work (under a five percent permanent partial disability award), she was diagnosed with recurrent right wrist carpal tunnel syndrome, and the first insurer agreed to reinstate Hensley's temporary total disability award (thereby removing the permanent partial disability award). Hensley then reported left wrist pain, and nerve conduction studies revealed bilateral carpal tunnel syndrome. By this time, the second insurance carrier had assumed the employer's workers' compensation coverage. Hensley, 22 Va. App. at 548-50, 471 S.E.2d at 804-05.

On appeal, this Court reversed the commission's decision to assign payments of disability benefits to both insurers. Relying on Code § 65.2-506, this Court held that the second insurer was responsible for paying Hensley's ongoing temporary total disability benefits. This Court deferred to the commission's finding that Hensley's temporary total disability was caused "partially to her right-hand condition and partially to the left," observing that the commission made no finding that either condition, standing alone, was totally disabling. Id. at 552-53, 471 S.E.2d at 806-07. This Court noted that "[e]ither CTS alone, causing only partial incapacity, might provide the basis for an award" for partial disability benefits – but explained that the conditions in both wrists, in conjunction, caused Hensley's ongoing total disability. Id. at 553, 471 S.E.2d at 807. In finding the second insurer was responsible for paying the temporary total disability benefits, this Court held:

> *Code § 65.2-506 sets forth a statutory scheme requiring payment of compensation for multiple injuries in inverse order of occurrence, the injury last suffered being first compensated.* Ms. Hensley's disability in her right wrist derived from her 1992 CTS. Her left wrist disability related to a CTS that developed later and was first diagnosed in May, 1994. Because the left CTS contributes to Ms. Hensley's total incapacity, the left CTS may properly be considered the basis for a total incapacity award pursuant to Code § 65.2-500. *By operation of Code § 65.2-506, compensation for the later injury must be paid first.* When that compensation is exhausted, or when the left wrist condition ceases to impose incapacity, compensation for the right wrist condition will resume, if justified.

Id. (emphasis added).

This Court in Hensley recognized that Hensley was not receiving partial disability benefits under Code § 65.2-502 at the time of her second injury, and, thus, this Court acknowledged that "this case does not fit precisely into the language of § 65.2-506." Id. at 554, 471 S.E.2d at 807. However, this Court explained, "Code § 65.2-506 expresses the legislative

approach to multiple contributing injuries." Id. This Court held that the "same approach" was "appropriate to this case." Id.

### 2. COMMISSION'S APPLICATION OF HENSLEY TO THIS CASE

In this case, given the factual findings that the commission made – which are not challenged on appeal[11] – the commission reasonably determined that this Court's decision in Hensley was instructive and very persuasive authority that guided the analysis here. The commission here expressly found that claimant "was disabled *in part* from his compensable work injuries from the March 19, 2011 work accident" – i.e., claimant's right arm neuropraxia – "and *in part* from his compensable ordinary disease of life" – i.e., claimant's bilateral carpal tunnel syndrome. (Emphasis added). These findings are very similar to the commission's findings in Hensley that Hensley's temporary total disability was attributable "partially to her right-hand condition and partially to the left" hand condition.

It is undisputed, as Hartford contends, that claimant's right arm neuropraxia initially was the sole cause of claimant's temporary total disability following the March 19, 2011 electrical shock accident. However, claimant's bilateral carpal tunnel syndrome clearly emerged as *another* cause of claimant's temporary total disability once its diagnosis was confirmed. Both conditions "independently are compensable," as the commission noted. The medical evidence simply conflicted as to precisely *how much* each of these compensable conditions continued to contribute to claimant's temporary total disability – especially as many months transpired after the March 19, 2011 electrical shock accident.

While Dr. Hasan opined that "usually neurapraxic injuries improve in a few months and would be unusual to last more than six months," Dr. Capone signed disability slips excusing

---

[11] Hartford's assignment of error on appeal does not challenge any of the commission's actual factual findings. Instead, Hartford's assignment of error challenges only the commission's selection of a legal standard to apply to the facts of this case.

- 10 -

claimant from work on December 7, 2011 and January 17, 2012 that referenced only claimant's right arm neuropraxia. However, Dr. Capone was also very clear in the notes from claimant's December 7, 2011 appointment that claimant was "awaiting carpal tunnel decompression *so that this gentleman can return to some type of employment*." (Emphasis added). Claimant was still awaiting the carpal tunnel decompression procedure when the evidence closed in the commission proceedings.

On appeal, we view the evidence in the light most favorable to Central, as it was "the prevailing party before the commission." Dunnavant v. Newman Tire Co., 51 Va. App. 252, 255, 656 S.E.2d 431, 433 (2008). Under this settled standard of review, Central – not Hartford – benefits from all reasonable inferences from the evidence. Both the right arm neuropraxia and the bilateral carpal tunnel syndrome *might*, in isolation, remain sufficiently debilitating to cause claimant's ongoing temporary total disability standing alone – but the commission never made this express finding. Rather, the commission simply explained that both conditions "independently are compensable." Furthermore, sorting through the conflicting medical evidence, as it was entitled to do, the commission concluded generally – and without much further elaboration – that claimant's temporary total disability was "attributable to both compensable conditions."

The commission is generally accorded some deference in its construction of the Workers' Compensation Act, although its legal analysis certainly is not binding on Virginia's appellate courts. See Minor, 59 Va. App. at 628-29, 721 S.E.2d at 822. Given the commission's conclusion that claimant's ongoing temporary total disability was caused "in part" by his right arm neuropraxia and "in part" by his bilateral carpal tunnel syndrome, the commission reasonably determined that the circumstances in this case were sufficiently analogous to those in Hensley in order to render that decision persuasive on the commission's analysis of the present

case. The commission then followed this Court's directive from Hensley that, "[b]y operation of Code § 65.2-506, compensation for the later injury must be paid first." 22 Va. App. at 553, 471 S.E.2d at 807. Adhering to that language from this Court, the commission ordered Hartford, the insurer responsible for claimant's latter compensable condition (bilateral carpal tunnel syndrome), to pay claimant's temporary total disability benefits until that condition no longer contributes to claimant's disability.[12] Under these circumstances, we cannot conclude that the commission's decision was erroneous – especially in the absence of any authority even suggesting that the opposite result is correct as a matter of law.

## C. TWO CAUSES RULE

Hartford contends that the commission should have adopted the deputy commissioner's application of the two causes rule and found that Central was responsible for claimant's ongoing temporary total disability benefits. However, we agree with the commission that the two causes rule is inapplicable to the circumstances of this case.

The two causes rule applies in determining whether there is proof of a compensable injury. See, e.g., Haftsavar v. All Am. Carpet & Rugs, Inc., 59 Va. App. 593, 600, 721 S.E.2d 804, 808 (2012). The two causes rule "'refers to the case where a disability has two causes: one related to the employment and one unrelated.'" Smith v. Fieldcrest Mills, Inc., 224 Va. 24, 28, 294 S.E.2d 805, 808 (1982) (quoting Bergmann v. L & W Drywall, 222 Va. 30, 32, 278 S.E.2d

---

[12] A majority of states appear to have adopted the "last injurious exposure rule" for cases that involve two separate compensable injuries or conditions. See 9 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 153.02[1]. This rule "places full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relationship to the disability." Id. Under this rule, "[w]hen an employee sustains a subsequent industrial injury that is found to be a 'new' injury, the insurer at risk at the time of the second injury is liable for all of claimant's benefits." Id. at § 153.02[2]; see also General Acc. Fire & Life Assurance Corp. v. Waldon, 94 N.E.2d 487, 489 (Ind. 1950) (holding that the first insurer remained responsible for payment of Waldon's disability benefits because Waldon's second injury was not a new injury, but was instead a recurrence of the first injury). Virginia, however, has not adopted the "last injurious exposure rule" *as a matter of law* when the situation involves two separate compensable injuries or conditions.

801, 803 (1981)).  Under the two causes rule, "'a condition which has two causes, one related to a work injury, and one not, is compensable and the treatment of that condition will be the responsibility of the employer.'"  Haftsavar, 59 Va. App. at 600, 721 S.E.2d at 808 (quoting Papco Oil v. Farr, 26 Va. App. 66, 75, 492 S.E.2d 858, 862 (1997)); see also Augusta County Sheriff's Dep't v. Overbey, 254 Va. 522, 527, 492 S.E.2d 631, 634 (1997).

Here, claimant proved two compensable conditions – both related to his employment for S&S Electric.  Therefore, the two causes rule simply is inapplicable to the issue presented on appeal.

### III. CONCLUSION

The commission did not err when it ordered Hartford, the insurer responsible for claimant's most recent compensable condition, to pay for claimant's ongoing temporary total disability benefits.  Accordingly, for the foregoing reasons, we affirm the commission's decision in this case.

Affirmed.